IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00206-MR-WCM

| | |
|---|---|
| WAYNE L. ROSS, on behalf of himself and others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) FINANCIAL RECOVERY SERVICES, INC., ) ) ) ) Defendant. ) ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant's "Renewed Motion to Compel Arbitration and Dismiss of Defendant Financial Recovery Services, Inc." [Doc. 24].

## I. PROCEDURAL BACKGROUND

On June 30, 2021, the Plaintiff, Wayne L. Ross, initiated this action against the Defendant, Financial Recovery Services, Inc., in the Cleveland County General Court of Justice, Superior Court Division. [Doc. 1-2]. In his Complaint, the Plaintiff alleges that the "Defendant unreasonably disclosed, communicated and/or publicized information regarding Plaintiff's debt and all others similarly situated to another person" in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the North

Carolina Debt Collection Act, N.C. Gen. Stat § 75-50 *et seq.* [Id. at ¶¶ 1-2, 36-57, 58-64]. The Plaintiff also alleges that the Defendant violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. [Id. at ¶¶ 65-72]. On August 5, 2021, the Defendant removed the action to this Court.[1] [Doc. 1].

On October 15, 2021, the Defendant filed its "Motion to Compel Arbitration and Dismiss of Defendant Financial Recovery Services, Inc." ("Motion to Compel Arbitration"). [Doc. 9]. In response, the Plaintiff filed his "Motion for Leave to Take Limited Discovery on the Issue of Arbitrability and to Stay Defendant's Motion to Compel Arbitration and Dismiss Defendant Financial Recovery Services" ("Motion for Leave to Take Limited Discovery") on November 9, 2021. [Doc. 13].

On February 4, 2022, the Court issued an Order granting the Motion for Leave to Take Limited Discovery and holding the Motion to Compel Arbitration in abeyance pending the completion of such discovery.[2] [Doc. 16]. During the course of discovery, the parties agreed that the Defendant

---

[1] The Plaintiff moved to remand this case for lack of federal question jurisdiction. [Doc. 17]. By way of a separate Order, the Court has denied the Plaintiff's motion to remand.

[2] During the course of discovery, the Plaintiff moved to remand the action to Cleveland County Superior Court. [Doc. 17]. The Court will address this motion in a separate Order.

would withdraw the Motion to Compel Arbitration. [Doc. 22]. The Defendant withdrew such motion on May 13, 2022. [Doc. 23].

That same day, the Defendant filed its "Renewed Motion to Compel Arbitration and Dismiss of Defendant Financial Recovery Services, Inc." ("Renewed Motion to Compel Arbitration"). [Doc. 24]. The Plaintiff responded to such motion on June 8, 2022. [Doc. 29]. The Defendant replied on June 29, 2022. [Doc. 32].

Having been fully briefed, the Renewed Motion to Compel Arbitration is ripe for disposition.

## II. FACTUAL BACKGROUND

The Defendant is a collections agency employed by Barclays Bank Delaware ("Barclays"). [Doc. 24-1: Roberts Decl. at 1-2]. In August of 2018, the Plaintiff applied for a credit card account with Barclays. [Doc. 24-2: Beauchamp Decl. at 2]. Upon approving the Plaintiff's application, Barclays mailed the Plaintiff a credit card and a copy of the Cardmember Agreement for the Plaintiff's account. [Id.]. The Agreement states, in pertinent part, that "[b]y signing, keeping, using or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement." [Id. at 3, 6]. The Plaintiff used the credit card. [Id. at 3].

3

Case 1:21-cv-00206-MR-WCM   Document 34   Filed 09/26/22   Page 3 of 12

The Cardmember Agreement also contains an arbitration provision stating, in pertinent part, that:

> At the election of either you or us, any claim, dispute or controversy ("Claim") by either you or us against the other, arising from or relating in any way to this Agreement or your Account, or their establishment, or any transaction or activity on your Account, including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and (except as otherwise specifically provided in this Agreement) Claims regarding the applicability of this arbitration provision or the validity of the entire Agreement, *shall be resolved exclusively by arbitration.* For purposes of this provision, "you" includes yourself, any authorized user on the Account, and any of your agents, beneficiaries or assigns, or anyone acting on behalf of the foregoing, and "we" or "us" includes our employees, parents, subsidiaries, affiliates, beneficiaries, *agents* and assigns, and to the extent included in a proceeding in which Barclays is a party, its service providers and marketing partners.

[Id. at 7 (emphasis added)].

In November of 2020, Barclays referred the Plaintiff's account to the Defendant for collection efforts after the Plaintiff failed to pay his credit card debt. [Doc. 24-1: Roberts Decl. at 2]. After the Plaintiff's account was referred to the Defendant, the Plaintiff alleges that the Defendant conveyed information about the Plaintiff's debt to a third-party letter preparation vendor without the Plaintiff's consent. [Doc. 1-2: Complaint at ¶¶ 2, 9-26]. According

4

Case 1:21-cv-00206-MR-WCM   Document 34   Filed 09/26/22   Page 4 of 12

to the Plaintiff, such conduct violated state and federal law.  [Id. at ¶¶ 1, 36-72].

## III. STANDARD OF REVIEW

"Arbitration is a matter of contract."  Mey v. DIRECTV, LLC, 971 F.3d 284, 288 (4th Cir. 2020).  As such, before compelling arbitration, a court must determine whether the parties to the litigation validly contracted to arbitrate their dispute.  Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC, 993 F.3d 253, 258 (4th Cir. 2021).  The defendant bears the burden of establishing that the parties agreed to arbitrate their dispute.  Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., 867 F.3d 449, 456 (4th Cir. 2017).  In determining whether the defendant has carried such burden, a court must apply the summary judgment standard used in traditional civil litigation.  Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 234 (4th Cir. 2019); see Fed. R. Civ. P. 56(a).

Applying the summary judgment standard, a court may compel arbitration only if there is no genuine dispute of material fact as to whether the parties agreed to arbitrate the dispute.  See Fed. R. Civ. P. 56(a).  "If the record reveals a genuine dispute of material fact 'regarding the existence of an agreement to arbitrate,'" Section 4 of the Federal Arbitration Act ("FAA") requires the court to "'proceed summarily' and conduct a trial on the motion

5

Case 1:21-cv-00206-MR-WCM   Document 34   Filed 09/26/22   Page 5 of 12

to compel arbitration." Hub Int'l, 944 F.3d at 234 (quoting 9 U.S.C. § 4; Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015)).[3] "A factual dispute is material if the resolution thereof 'might affect the outcome of the [motion] under the governing law.'" Id. (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## IV. DISCUSSION

The Defendant argues that it has a right to enforce the arbitration provision in the Cardmember Agreement because it is one of Barclays' agents, and the Agreement grants "agents" the right to compel arbitration of certain disputes.[4] [Doc. 24]. The Plaintiff disputes the authority of the Defendant, who was not a party to the Cardmember Agreement between the Plaintiff and Barclays, to enforce the Agreement's arbitration provision. [Doc. 29]. Specifically, the Plaintiff argues that the Defendant's only admissible

---

[3] Section 4 provides, in pertinent part, "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

[4] "[T]he parties to a contract have the power, if they so intend, to create a right in a third person." Restatement (Second) of Contracts § 304 cmt. b (Am. L. Inst. 1981). While Barclays' agents are not parties to the contract between the Plaintiff and Barclays, they nonetheless may invoke the arbitration provision as the "intended beneficiar[ies]" of such promise to arbitrate. Id. § 304 ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and *the intended beneficiary may enforce the duty*." (emphasis added)).

6

evidence of its agency relationship with Barclays is a conclusory declaration, the supportability of which is called into question by other materials produced by the Defendant.[5] [Id. at 2, 4-11].

Generally, an agent is one who is authorized to act on behalf of another and subject to that person's control. United States v. Rafiekian, 991 F.3d 529, 539 (4th Cir. 2021); Restatement (Second) of Agency § 1 (Am. L. Inst. 1958). The Defendant bears the burden of demonstrating that it is one of Barclays' agents. Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., 867 F.3d 449, 456 (4th Cir. 2017). Recognizing that such showing required further factual development as to the relationship between the Defendant and Barclays, the Court ordered the parties to conduct limited discovery on the issue. [Doc. 16]. In arguing that it is an agent of Barclays, the Defendant relies on two declarations and one document produced during discovery. [Docs. 24-1, 24-2, 27].

---

[5] The Defendant requests that the Court let the arbitrator decide whether the Cardmember Agreement's arbitration provision may be enforced. [Doc. 32 at 8-9]. As support for its position, the Defendant points to language in the Cardmember Agreement delegating to the arbitrator issues regarding the applicability of the arbitration provision and the validity of the Cardmember Agreement. [Doc. 24-2 at 7]. According to the Defendant, such language requires the Court to delegate all contract formation and enforceability issues to the arbitrator. [Doc. 32 at 8-9 (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010))]. This contention is incorrect. "Section 4 of the FAA has made clear that it is up to the Court to determine whether a contract [to arbitrate] has been formed" between the parties in the litigation. Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC, 993 F.3d 253, 258 (4th Cir. 2021); accord Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 234 (4th Cir. 2019).

The declarations provided by the Defendant are from two Barclays representatives, Mike Roberts and Stephanie Beauchamp. [Docs. 24-1, 24-2]. The Roberts Declaration explains that Barclays placed the Plaintiff's debt with the Defendant for collection upon the Plaintiff's default. [Doc. 24-1 at 2]. Such declaration also includes the conclusory assertion that the Defendant "is Barclays' collection agent assigned Plaintiff's Account for the purpose of collecting on behalf of Barclays." [Id.]. It contains no other facts regarding the Defendant's relationship with Barclays. Similarly, the Beauchamp Declaration contains no facts regarding the Defendant's relationship with Barclays. [Doc. 24-2]. As such, the declarations provide no facts from which the Court can ascertain the relationship between Barclays and the Defendant, and the conclusory statement in the Roberts Declaration, by itself, cannot support compelling arbitration. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory.").

The Defendant also relies on a document—purportedly an agreement between Barclays and the Defendant—titled, "Global Framework for Supply of Products and Services." [Doc. 27]. The Defendant, however, provides no affidavit, declaration, or other evidence that authenticates this document as an agreement between Barclays and the Defendant. See Fed. R. Evid.

901(a) ("[T]he proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); United States v. Vidacak, 553 F.3d 344, 349 (4th Cir. 2009) ("The district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." (citations omitted)).  The absence of authenticating evidence is particularly problematic because certain attributes of the document gravely undermine its authenticity.  First and foremost, the document contains no signature from any Barclays representative, only signatures from the Defendant's representative.  [Doc. 27 at 28, 71, 103, 138, 142].  Second, the document contains several "track-changes" boxes, identifying places where language has been modified or deleted by unidentified persons.  [Id. at 128-33].  In light of the foregoing, the Court cannot consider terms of this document, in its current partially-executed and unauthenticated form, as reflective of the relationship between Barclays and the Defendant.  See Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) (holding that unauthenticated documents cannot be considered on a motion for summary judgment); Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC, 993 F.3d 253, 258 (4th Cir. 2021) (instructing district courts to

9

adjudicate motions to compel arbitration under the traditional summary judgment standard).

Even if the Court could consider the substance of the document in its current form, it would not conclusively establish Barclays' agency relationship with the Defendant. While the Defendant emphasizes portions of the document which purport to provide Barclays with some control over the Defendant's debt collection operations, such document also states: "No part of these General Terms, any Module or any Contract is intended to create or record any employment, partnership, joint-venture, agency or other such relationship between any Barclays entity and [the Defendant]." [Doc. 27 at 25 ¶ 13.7.2]. Thus, the document itself expressly disclaims the formation of any agency relationship between the signatories to the document.

Moreover, in response to the Plaintiff's requests for admission, the Defendant admitted that it retained "some level of control" over the manner and means of its collection work on past-due Barclays accounts. [Doc. 24-3 at 23]. As such, the degree to which Barclays controlled the Defendant's operations remains unclear, and the record before the Court does not contain sufficient authenticated evidence from which the Court can ascertain whether an agency relationship in fact existed. See Restatement (Second)

10

of Agency § 14 ("A principal has the right to control the conduct of the agent with respect to matters entrusted to him.").

In its previous Order, the Court held that "limited discovery is needed in order to adduce the documents and facts needed to apply the terms of the arbitration provision" in the Cardmember Agreement. [Doc. 16 at 7]. After conducting such discovery, genuine issues of material fact remain as to whether the parties agreed to arbitrate this dispute.[6] As such, this matter must be set for an evidentiary hearing on that issue. See Hub Int'l, 944 F.3d at 238-42.

Within seven (7) days of entry of this Order, the parties must either demand a jury trial, pursuant to 9 U.S.C. § 4, on the issue of whether they agreed to arbitrate this dispute or consent to a bench trial on the same. Moreover, within thirty (30) days of entry of this Order, the parties must submit supplemental briefing on which state's contract and agency law the Court must apply in evaluating the evidence presented at such forthcoming

---

[6] The parties disagree as to which state's law to apply in interpreting the Cardmember Agreement and the Defendant's relationship with Barclays. It is true that state-law contract formation and interpretation principles are applied to determine whether parties agreed to arbitrate their dispute. See Mey v. DIRECTV, LLC, 971 F.3d 284, 288 (4th Cir. 2020). Because the Defendant has failed to produce competent evidence upon which the Court can ascertain its relationship with Barclays, however, the Court does not reach the issue of which state's contract and agency law would apply to the substantive question of whether the Defendant is one of Barclays' agents within the meaning of that term in the Cardmember Agreement.

evidentiary hearing. See Mey v. DIRECTV, LLC, 971 F.3d 284, 288-91 (4th Cir. 2020) (applying West Virginia law); Hub Int'l, 944 F.3d at 236-41 (applying South Carolina law); Rowland, 993 F.3d at 258-61 (applying North Carolina law).

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Renewed Motion to Compel Arbitration [Doc. 24] is **HELD IN ABEYANCE** pending an evidentiary hearing.

**IT IS FURTHER ORDERED** that, within seven (7) days of entry of this Order, the parties must either demand a jury trial on the issue of whether they agreed to arbitrate this dispute or consent to a bench trial on the same. Moreover, within thirty (30) days of entry of this Order, the parties must submit supplemental briefing on which state's contract and agency law the Court must apply in evaluating the evidence presented at such forthcoming evidentiary hearing.

**IT IS SO ORDERED.**

Signed: September 25, 2022

Martin Reidinger
Chief United States District Judge